

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLENE GUIDO, | ) | No. ED CV 15-2058-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 6, 2015, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 30, 2015, and November 19, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on October 24, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

## II.

## BACKGROUND

Plaintiff was born on December 30, 1960. [Administrative Record ("AR") at 120, 125, 1380.] She has past relevant work experience as a project manager, worker's compensation medical adjuster, corporate manager/office manager, and customer service manager. [AR at 1380, 1467-68.]

On April 18, 2008, plaintiff filed an application for a period of disability and DIB, and on April 22, 2008, she filed an application for SSI payments, alleging in both that she has been unable to work since June 30, 2005. [AR at 120-24, 125-29, 1364.] After her applications were denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 87, 1364, 1477.] A hearing was held on November 2, 2009, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 1390-1423.] A vocational expert ("VE") also testified. [AR at 1418-22.] On January 12, 2010, the ALJ issued a decision concluding that plaintiff was not under a disability from June 30, 2005, the alleged onset date, through January 12, 2010, the date of the decision. [AR at 1477-84.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 13-19.] The Appeals Council denied plaintiff's request for review on March 30, 2012. [AR at 1-6.] Plaintiff appealed to this Court and the Magistrate Judge previously assigned to the matter remanded the case back to the agency. [AR at 1505-21.] On October 27, 2014, another hearing was held before a different ALJ, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 1424-73.] A VE, an orthopedic medical expert, and a psychiatric medical expert also testified. [AR at 1430-43, 1448-55, 1465-71.] On January 9, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from June 30, 2005, the alleged onset date, through January 9, 2015, the date of the decision. [AR at 1364-82.] When the Appeals Council denied plaintiff's request for review on August 8, 2015 [AR at 1345-50], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

/

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

**A.      THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/

/

/

4

1    **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

2              At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

3    June 30, 2005, the alleged onset date.[1] [AR at 1366.] At step two, the ALJ concluded that plaintiff

4    has the severe impairments of multiple sclerosis; a respiratory disorder with tobacco dependence;

5    rheumatoid arthritis; peripheral neuropathy; carpal tunnel syndrome; a depressive disorder; and

6    a history of alcohol abuse. [AR at 1367.] At step three, the ALJ determined that plaintiff does not

7    have an impairment or a combination of impairments that meets or medically equals any of the

8    impairments in the Listing. [AR at 1367.] The ALJ further found that plaintiff retained the residual

9    functional capacity ("RFC")[2] to perform a range of light work as defined in 20 C.F.R. § 404.1567(b)

10   and § 416.967(b),[3] as follows:

11             [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, and
               she can push and pull within the same weight limits. She can stand and walk for six
12             hours out of an eight-hour workday, but she cannot perform prolonged walking
               greater than 30 minutes at a time. She can sit for six hours out of an eight-hour
13             workday with the ability to stand and stretch not to exceed 10% of the time. She
               cannot climb ladders, ropes or scaffolds; and she cannot crawl. She can
14             occasionally stoop, crouch, and kneel. She cannot work in hazardous conditions
               such as working at unprotected heights. She can occasionally operate fast or
15             dangerous machinery. She can occasionally use stairs or ramps. She can
               occasionally operate foot pedals. She should avoid exposure to concentrated
16             vibration. She may perform frequent but not constant gross and fine manipulation.
               She can perform non-complex routine tasks. She cannot perform tasks requiring
17             hypervigilance or watching out for the safety of others. She cannot perform fast-

18   _____

19        [1]   The ALJ concluded that plaintiff met the insured status requirements of the Social
20   Security Act through June 30, 2010. [AR at 1366.]

21        [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
     limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
22   three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
     the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149,
23   1151 n.2 (9th Cir. 2007) (citation omitted).

24        [3]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
25   of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
     this category when it requires a good deal of walking or standing, or when it involves sitting most
26   of the time with some pushing and pulling of arm or leg controls. To be considered capable of
     performing a full or wide range of light work, you must have the ability to do substantially all of
27   these activities. If someone can do light work, we determine that he or she can also do sedentary
     work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
28   long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

1    paced work, and she cannot interact with the public.

2    [AR at 1368.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ

3    concluded that plaintiff is unable to perform any of her past relevant work in the occupations of

4    project manager, worker's compensation medical adjuster, corporate manager/office manager,

5    and customer service manager.  [AR at 1380, 1467-68.]  At step five, based on plaintiff's RFC,

6    vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant

7    numbers in the national economy that plaintiff can perform, including work as an "office helper"

8    (Dictionary of Occupational Titles ("DOT") No. 239.567-010), "inspector hand packager" (DOT No.

9    559.687-074), and "assembler, plastic household products" (DOT No. 712.687-010).  [AR at 1381,

10   1468-69.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the

11   alleged onset date of June 30, 2005, through January 9, 2015, the date of the decision.  [AR at

12   1381-82.]

13

14                                          **V.**

15                              **THE ALJ'S DECISION**

16          Plaintiff contends that the ALJ erred when she:  (1) determined plaintiff's physical RFC; (2)

17   considered the opinion of the examining physician, Mark D. Pierce, Ph.D.; and (3) determined

18   plaintiff can perform the identified occupations at step five of the disability analysis.  [JS at 6.]  As

19   set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

20

21   **A.    STEP FIVE**

22          In determining whether appropriate jobs exist for a claimant, or whether the claimant can

23   perform her past relevant work, the VE generally will refer to the DOT.  See Light v. Social Sec.

24   Admin., 119 F.3d 789, 793 (9th Cir. 1997).  The DOT is usually "the best source for how a job is

25   generally performed."  Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).  Social Security

26

27

28

                                          6

Ruling ("SSR")[4] 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation.  See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).[5]  The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT.  Massachi, 486 F.3d at 1153.  In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.  Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153.  Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."  SSR 00-4p.  Thus,

---

[4]   "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the [Social Security Administration].  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[5]   SSR 00-4p provides in relevant part:

When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. . . .
. . . .
If the VE's . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict.
. . . .
When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p (emphasis added).  SSR 00-4p similarly provides that "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."  Id. (emphasis added).

1   an ALJ must first determine whether a conflict exists, and if it does, she must then determine

2   whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying

3   on the expert rather than the DOT.  Id.

4        Only after determining whether the testimony of the VE has deviated from the DOT, and

5   whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial

6   evidence to support a disability determination.  Massachi, 486 F.3d at 1152-54.  Evidence

7   sufficient to support a deviation from the DOT may be either specific findings of fact regarding a

8   claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's

9   testimony.  See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting

10  that the VE described characteristics and requirements of jobs in the local area consistent with

11  claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for

12  deviation where VE's understanding of applicable legal standards is clear from context).

13

14  **B.     THE PARTIES' CONTENTIONS**

15       Plaintiff's RFC limits her to standing and walking for six hours out of an eight-hour workday,

16  but "she cannot perform prolonged walking greater than 30 minutes at a time."  [AR at 1468.]

17  Additionally, she is limited to sitting for six hours out of an eight-hour workday, "with the ability to

18  stand and stretch, not to exceed ten percent of the day."[6]  [Id.]  The ALJ's hypotheticals to the VE

19  included these limitations.  [AR at 1468-70.]

20       Plaintiff contends that her RFC requiring a sit-stand option is in conflict with the DOT

21  requirements for the VE's suggested light occupations, and neither the VE nor the ALJ provided

22  a reasonable explanation for the deviation from the DOT descriptions.  [JS at 33-37.]

23       Defendant notes that before the VE testified, the ALJ directed her as follows: "Do you

24  _____

25       [6]   This RFC limitation is not entirely clear.  For instance, it could mean that plaintiff's total
    time spent standing and stretching if seated for six hours during an eight-hour workday, would not
26  exceed a total of 48 minutes -- or ten percent of an eight-hour day.  Alternatively, it could be
    interpreted to mean that plaintiff's total time spent standing and stretching would not exceed a total
27  of 36 minutes -- or ten percent of the six hours that she is seated.  The ALJ, on remand, shall
    clarify the meaning of this RFC limitation.
28

8

1   understand that if you give me an opinion that conflicts with information in the DOT you need to

2   advise me of the conflict and the basis of your opinion?" and the VE replied, "I do."  [JS at 37

3   (citing AR at 1466).]  Defendant argues that because the ALJ asked the VE to identify any conflicts

4   with the DOT, the VE identified no such conflicts, and plaintiff's counsel did not "otherwise

5   challenge the existence of any conflict," the ALJ met her obligations.  [JS at 39.]  Defendant also

6   argues that because the DOT is silent on the availability of an option to alternate positions with

7   respect to the suggested occupations, there is no apparent conflict and, therefore, no need for the

8   ALJ to obtain an explanation as to any deviation.  [JS at 38, 39.]

9

10  **C.   ANALYSIS**

11          Preliminarily, defendant's argument -- that because plaintiff failed to "challenge the

12  existence of any conflict" at the hearing "the ALJ met [her] obligations under Massachi and SSR

13  00-4p to investigate potential conflicts with the DOT" -- is unpersuasive.  "[T]he fact that Plaintiff's

14  representative did not challenge the VE's testimony as inconsistent with the DOT at the time of

15  the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a

16  waiver of the argument."  Gonzales v. Astrue, 2012 WL 2064947, at *4 (E.D. Cal. June 7, 2012)

17  (citing Sims v. Apfel, 530 U.S. 103, 111-12, 120 S. Ct. 2080, 147 L. Ed. 2d 80) (2000)).  Moreover,

18  it is the ALJ who bears the burden of making the necessary inquiry of the VE.  SSR 00-4p;

19  Massachi, 486 F.3d at 1152-53; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ

20  has a special duty to fully and fairly develop the record and to assure that the claimant's interests

21  are considered, even when the claimant is represented by counsel).  Here, *before* the VE testified

22  the ALJ asked her whether she understood that she should advise the ALJ of any conflicts with

23  information in the DOT and to provide the basis of her opinion.  However, *after* the VE testified,

24  the ALJ did not make any further inquiry into whether the VE's testimony actually *had been*

25  *consistent with* the DOT.  [See AR at 1466, 1469-70.]  Neither did the VE identify any potential

26  conflict or deviation from the DOT as to the sit-stand limitations, or provide any explanation to

27  resolve the apparent conflict.  An ALJ "cannot simply rely on the VE's testimony that no such

28  conflicts exist."  See Marquez v. Astrue, 2012 WL 3011779, at *2-3 (D. Ariz. July 23, 2012).

Equally unpersuasive is defendant's argument that there is no apparent conflict between the DOT job requirements and the VE's testimony simply because the DOT is silent on the issue of a sit-stand option.  There is no dispute that the DOT, which defines light work as requiring "a good deal of walking or standing," does not discuss the availability of an option to alternate positions.  See Buckner-Larkin v. Astrue, 450 F. App'x 626, 628 (9th Cir. 2011) (noting that "the DOT does not discuss a sit-stand option").  Each of the three occupations suggested by the VE in this case is considered to be light, unskilled work [see AR at 1381] and, as such, could require, among other things, "a good deal of walking or standing."  DOT Nos. 239.567-010, 559.687-074, 712.687-010.  Additionally, SSR 83-12 recognizes that although certain jobs permit an employee some choice regarding sitting and standing, "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."  See also Ruiloba v. Colvin, 2016 WL 3067440, at *4 (C.D. Cal. May 31, 2016) (citing Wester v. Colvin, 2015 WL 4608139, at *5 (C.D. Cal. July 31, 2015)).  Light, unskilled work, therefore, such as the occupations suggested by the VE here, seems to be inconsistent with plaintiff's inability to perform prolonged walking for "greater than 30 minutes at a time," as well as with her need to stand and stretch periodically throughout the day if seated.  [See supra note 6.]

Indeed, "[w]hile district courts in this Circuit are split on the issue, unpublished Ninth Circuit cases suggest that there is an apparent conflict between the DOT and VE testimony where, as here, the VE testifies that there are jobs available at the light or sedentary exertional level for a claimant who needs a sit stand option."  Ruiloba, 2016 WL 3067440, at *4 (citing Buckner-Larkin, 450 F. App'x at 628-29; Coleman v. Astrue, 423 F. App'x 754, 756 (9th Cir. 2011) (finding apparent conflict between the DOT and VE testimony that the claimant could perform certain sedentary and light occupations, many of which "could not accommodate [a claimant's] need to switch between sitting, standing, and walking on an hourly basis")); see also Smith v. Astrue, 2010 WL 5776060, at *11 (N.D. Cal. Sept. 16, 2010) ("District courts in the Northern District of California have construed Massachi . . . to mean that where an expert opines on an issue about which the DOT is silent, a conflict exists") (citation omitted).  Defendant instead relies on the unpublished cases of Wentz v. Comm'r of Soc. Sec. Admin., 401 F. App'x 189, 191 (9th Cir. 2010), and

1    Mickelson-Wurm v. Comm'r Soc. Sec. Admin., 285 F. App'x 482, 486 (9th Cir. 2008), for her

2    argument that because the DOT "is silent on the ability for employees to engage in a sit/stand

3    option on any given job," there is no apparent deviation, and because plaintiff's counsel did not

4    "otherwise challenge the existence of any conflict," the ALJ met her obligations to investigate any

5    potential conflicts with the DOT.  [JS at 38-39.]

6          This Court is persuaded that the weight of authority in this circuit "clearly supports the

7    proposition that a limitation that does not appear in the DOT cannot be included in the ALJ's

8    hypothetical or the VE's testimony without explanation," as "the absence of the limitation from the

9    DOT creates an 'apparent unresolved conflict' within the meaning of SSR 00-4p." Clark v. Colvin,

10   2015 WL 5601406, at *5 (E.D. Cal. Sept. 22, 2015) (citing cases).  In short, there is an apparent

11   conflict between the DOT requirements for jobs at the light level and VE testimony that such jobs

12   can nevertheless be performed by a claimant who requires a sit-stand option. See Ruiloba, 2016

13   WL 3067440, at *4 (citing cases). An explanation for the deviation is required. Cf. Buckner-Larkin,

14   450 F. App'x at 628-29 (because the VE acknowledged that the DOT does not discuss a sit-stand

15   option, and explained that his determination that the claimant could nevertheless perform the

16   suggested jobs was based on "his own labor market surveys, experience, and research," the

17   conflict was addressed and explained by the VE, as well as addressed by the ALJ in the decision,

18   and reversal was not warranted).  Ninth Circuit precedent, moreover, requires "that the record

19   clearly show how the ALJ resolved apparent conflicts." Norris v. Colvin, 2013 WL 5379507, at *3

20   (C.D. Cal. Sept. 25, 2013) (citing Massachi, 486 F.3d at 1153).  Thus, absent a reasonable

21   explanation for the conflict -- and defendant (who contends there is no apparent deviation) has

22   pointed to no persuasive evidence in the record to explain the deviation in this case -- an ALJ

23   cannot properly rely on the VE's testimony as substantial evidence to support a disability

24   determination.  Massachi, 486 F.3d at 1152-54; SSR 00-4p.

25          Further, Massachi "does not suggest that the ALJ need look no further than the VE's

26   testimony in order to meet [her] obligation under SSR 00-4p to search for conflicts between the

27   VE and the DOT." Marquez, 2012 WL 3011779, at *2-3.  Instead, Massachi "construes SSR 00-

28   4p as 'explicitly requiring that the ALJ determine whether the expert's testimony deviates from the

1  [DOT] and whether there is a reasonable explanation for any deviation.'" Marquez, 2012 WL

2  3011779, at *2; see generally Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006)

3  (remanding for ALJ to address "unresolved potential inconsistency" between VE testimony and

4  DOT where it was unclear whether DOT's requirements for representative jobs accounted for

5  claimant's limitation, and the ALJ failed to resolve such inconsistency with the VE; as a result the

6  reviewing court was unable to determine whether the VE's testimony actually conflicted with the

7  DOT) (cited by Massachi, 486 F.3d at 1153-54 & nn.7, 8, 13, 20).  The Court finds that the ALJ's

8  "pro forma" request to the VE -- prior to the VE's testimony -- to advise the ALJ if her testimony

9  was in conflict with the DOT does not comply with the ALJ's obligation under Massachi and SSR

10  00-4p, to inquire about and resolve any deviations between the DOT and VE testimony.  In short,

11  while counsel is not supposed to be a "potted plant" at the administrative hearing (see Solorzano

12  v. Astrue, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012)), neither is the ALJ.

13      Here, the ALJ relied on VE testimony that conflicted with the DOT, and the ALJ was

14  therefore required to explain the deviation by making either specific factual findings or drawing

15  inferences from the context of the VE's testimony.  See Light, 119 F.3d at 793.  She did not do so.

16  Instead, the record contains only the VE's conclusion that plaintiff, with her limitation to no

17  prolonged walking over thirty minutes, and the periodic need to stand and stretch if seated, can

18  perform work requiring "a good deal of walking or standing," and the ALJ's unsupported

19  determination that the VE's testimony "is consistent with the information contained in the [DOT],"

20  despite the DOT's lack of explicit sit-stand options for these occupations.  "Where an ALJ fails to

21  obtain an explanation for and resolve an apparent conflict -- even where the VE did not identify

22  the conflict -- the ALJ errs."  Richardson v. Astrue, 2012 WL 1425130, at *5 (N.D. Cal. Sept. 14,

23  2015).

24      Remand is required to obtain VE testimony to resolve the inconsistency between plaintiff's

25  sit-stand limitations, and the DOT job requirements for the three light, unskilled occupations

26  suggested by the VE, which require a "good deal of walking or standing," and do not provide for

27  sit-stand options.  Massachi, 486 F.3d at 1155.

28

# VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  <u>See Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1041 (9th Cir. 2007); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  <u>See Benecke</u>, 379 F.3d at 593-96.

In this case, there is an outstanding issue that must be resolved before a final determination can be made.[7]  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, the ALJ shall obtain VE testimony to resolve the inconsistency between plaintiff's need for sit-stand options,[8] and the DOT job descriptions for the three light, unskilled, representative occupations suggested by the VE.  In her hypothetical(s) to the VE, the ALJ shall explain what she means by the limitation to sitting for six hours out of an eight-hour workday, "with the ability to stand and stretch, not to exceed ten percent of the day."  Finally, based on the VE testimony, the ALJ shall determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[9]

/

/

---

[7]   The Court exercises its discretion not to adjudicate plaintiff's other challenges to the ALJ's decision.

[8]   Nothing herein is intended to disrupt the ALJ's overall RFC determination.

[9]   Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  November 15, 2016

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

14